# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ARSENAL, INC.,

    Plaintiff,

v.

ADAM NEAL,

    Defendant.

Case No. 2:11-cv-01628-KJD-CWH

**ORDER**

    Presently before the Court is Plaintiff's Motion for Summary Judgment (#11). Though the time for doing so has passed, no response in opposition has been filed. Therefore, in accordance with Local Rule 7-2(d) ("LR 7-2"), and having considered the motion on the merits, the Motion for Summary Judgment is granted in part and denied in part.

I. Background

    Plaintiff, Arsenal, Inc. ("Arsenal"), is a licensed U.S. manufacturer of firearms. Beginning on July 1, 2010, Defendant Adam Neal ("Neal") published three videos on his YouTube channel, "MrAk47Master," that undermined the quality of Arsenal's goods and services.

    In the first video (the "Combat Ready Video"), posted on July 9, 2010, Neal claimed that Arsenal goods were not "combat ready." As of December 26, 2012, the Combat Ready Video has been viewed 24,199 times. In the second video (the "Boycott Video"), posted on July 18, 2010, Neal

called for a boycott of Arsenal because of its allegedly fraudulent behavior. As of December 26, 2012, the Boycott Video has been viewed 12,572 times. In the third video (the "Test Video"), posted August 12, 2010, Neal performed a test on the rifle, which included firing the gun rapidly and throwing dirt on it. After the gun jammed several times, Neal concluded that the gun did not perform as it should have. As of December 26, 2012, the Test Video has been viewed 12,465 times.

On July 27, 2010, Arsenal mailed Neal, via certified mail, a cease and desist letter. Specifically, the letter requested that Neal immediately remove the videos and informed Neal of the industry-approved military specification requirements ("MIL-SPEC"). Defendant did not comply with the cease and desist letter.

On October 7, 2011, Arsenal filed a complaint with this Court, alleging business disparagement and interference with prospective economic advantage and seeking injunctive relief. On November 14, 2011, Neal filed an answer to the complaint, alleging that his statements were mere opinion and protected by the First Amendment. On December 31, 2012, Arsenal filed the present motion for summary judgment. Neal did not respond to the motion.

II. Summary Judgment Standard

LR 7-2 provides that the "failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." Arsenal contends that because Defendant has failed to respond to its motion for summary judgment, he has consented to the Court granting it. Although LR 7-2 allows the Court to grant a summary judgment motion on the basis of no response, two considerations impede such a swift resolution: (1) for pro se litigants, other motions or pleadings may be eligible to oppose this motion, and (2) a local rule must be compatible with federal law. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (citing McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987)); Henry v. Gill Industries, Inc., 983 F.2d 943, 950 (9th Cir. 1993).

First, although Defendant has not responded to the summary judgment motion, in evaluating a motion leveled against a pro se defendant, the Court must consider all of Defendant's "contentions

offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Defendant] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." Jones, 393 F.3d at 923 (citing McElyea, 833 F.2d at 197)). The only contention Defendant has submitted is his answer to the complaint. While the assertions contained therein are based on personal knowledge and present facts potentially admissible as evidence, Defendant did not attest to their truth under penalty of perjury, making them unfit for consideration in opposing this motion. Thus, the motion is entirely unopposed.

Second, LR 7-2 must be construed as to not conflict with federal law. Henry, 983 F.2d at 950. Specifically, in the summary judgment context, LR 7-2 must be compatible with Rule 56. Fed. R. Civ. P. 56. Pursuant to Rule 56, summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. And all justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. Thus, under federal law, a summary judgment motion cannot be granted unless the moving party meets its burden and the nonmoving party fails to demonstrate a genuine factual issue. A summary judgment motion "cannot be granted simply as a sanction for a local rule violation." See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995). Accordingly, the Court must consider the merits of Arsenal's summary judgment motion to determine if it has met its burden.

Before proceeding to the merits, the Court must address a unique issue raised by the peculiar facts of this case. As mentioned previously, Neal's allegedly offensive conduct has been distributed

to his audience through three YouTube videos. Thus, there are three distinct segments at issue. Arsenal attempts to characterize these videos as a series, allowing it to group them together for the purpose of satisfying the elements of its claims. As it pertains to the Combat Ready Video and Test Video, the Court finds this appropriate, because the Combat Ready Video is merely an analysis of the Test Video's results. However, the Boycott Video is not substantially related to the content of the Combat Ready Video and Test Video. Thus, while, for the purposes of analysis, the Combat Ready Video and Test Video will be considered in conjunction (collectively, the "Combat/Test series"), the Boycott Video will be treated as distinct and independent.

III. Business Disparagement

Arsenal meets its burden for business disparagement as it relates to the Combat/Test series, but not as it relates to the Boycott Video. Under Nevada law, a business disparagement claim requires the Plaintiff to show the following: (1) a false and disparaging statement, (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages. Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc., 213 P.3d 496, 504 (Nev. 2009).

A. False and Disparaging Statement

As to the Combat/Test series, Neal's statement that the Arsenal rifle "can't possibly be MIL-SPEC" is false (the "MIL-SPEC statement"). Ex. 3, Combat Ready Video transcript 5:23-24. According to Harry Pakhanyan's declaration, Neal's test is not the test used to evaluate whether a rifle meets the MIL-SPEC standard, and the true test would have showed that Arsenal rifles meet the MIL-SPEC standard. The MIL-SPEC statement is disparaging because "it casts doubt upon the quality" of the product and Neal intended this result. See Restat 2d of Torts, § 629.

As to the Boycott video, Neal's statement that Arsenal's behavior is fraudulent is based on Neal's belief that Arsenal paid Nutnfancy, another YouTube user, to publish a favorable review. Read in context, fraudulent is used in its colloquial sense, meaning deceptive or dishonest. If Neal's allegations are true, that Arsenal has paid Nutnfancy to give a positive review, the fraudulent characterization is arguably true. At the summary judgment stage, the Court must construe

4

everything in the light most favorable to the nonmoving party. <u>Matsushita</u>, 475 U.S. at 587. Accordingly, because Arsenal has not provided evidence to disprove the Boycott Video's assertions, the Court assumes them to be true. Because this is the only statement at issue in the Boycott Video and Arsenal has not met its burden as to the first element, the Court will not explore the other business disparagement elements as they pertain to this video.

### B. Unprivileged Publication

The MIL-SPEC statement is not privileged. Arsenal relies on defamation case law to assert that, although Neal claims his statements are opinions, they carry factual implications not within the protection of the First Amendment. See <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1, 2 (2009). Because of the difficulty involved in ascertaining whether a statement is an opinion protected by the First Amendment or an actionable assertion of fact, the Ninth Circuit has adopted a three-factor test designed to answer this question:

> First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.

<u>Underwager v. Channel 9 Austl.</u>, 69 F.3d 361, 366 (9th Cir. 1995) (citing <u>Partington v. Bugliosi</u>, 56 F.3d 1147, 1153 (9th Cir. 1994)).

Concerning the Combat/Test series, the MIL-SPEC statement is actionable: the broad purpose of the video is to discover an objective fact, the statement is presented as a finding of an objective test, and the statement is sufficiently factual that it can be disproven by applying the true MIL-SPEC test.

### C. Malice

Arsenal has proven that Neal's statements in the Combat/Test series were made with a reckless disregard for the truth. "Malice is proven when the plaintiff can show either that the defendant published the disparaging statement with the intent to cause harm to the plaintiff's

5

pecuniary interests, or the defendant published a disparaging remark knowing its falsity or with reckless disregard for its truth." Clark County, 213 P.3d at 504-05 (citing Pegasus v. Reno Newspapers, Inc., 57 P.3d 82, 92-93 (2002)). After Neal received notice that his understanding and application of the MIL-SPEC test was erroneous and misleading, he had no excuse to not, at the very least, amend the Combat/Test series to reflect the truth. By continuing to make the video available to the public, Neal has demonstrated, at the very least, a reckless disregard for the truth.

### D. Special Damages

Arsenal has proven that it has suffered economic loss as a result of the Combat/Test series. To succeed in a business disparagement claim, the plaintiff must "set forth evidence proving economic loss that is attributable to the defendant's disparaging remarks." Id. at 505 (citing Advanced Training Sys. v. Caswell Equip. Co., 352 N.W.2d 1, 7-8 (Minn. 1984)). Arsenal has submitted several comments of prospective buyers who have chosen to not purchase Arsenal products after watching Neal's Combat/Test series. This evidence is sufficient to establish special damages because it shows both loss and causation.

Arsenal has adequately proven that the Combat/Test series satisfies the elements of business disparagement. However, because the Boycott Video deals with a subject distinct from the Combat/Test series and does not contain a statement that Arsenal has proven false, it does not satisfy the elements of business disparagement.

## IV. Interference with Prospective Economic Advantage

Arsenal has adequately established the elements of interference with prospective economic advantage for the Combat/Test series, but not for the Boycott Video. Under Nevada law, to succeed on a claim for interference with prospective economic advantage the plaintiff must prove the following: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5)

actual harm to the plaintiff as a result of the defendant's conduct." Wichinsky v. Mosa, 847 P.2d 727, 729-30 (Nev. 1993).

In addition to these elements, "a plaintiff must show that the means used to divert the prospective advantage was unlawful, improper or was not fair and reasonable." Custom Teleconnect, Inc. v. Int'l Tele-Services, Inc., 254 F. Supp. 2d 1173, 1181 (D. Nev. 2003). As an extension of this notion, tortious interference generally cannot be found on the basis of true statements, for such will not generally be unlawful or otherwise improper. See Herman Miller, Inc. v. Teknion Furniture Sys., 1996 U.S. Dist. LEXIS 8585, 7 (N.D. Ill. June 19, 1996) (citing Delloma v. Consolidation Coal Co., 996 F.2d 168, 172 (7th Cir. 1993)) (internal quotations omitted). Courts from other jurisdictions have explicitly addressed the issue, explaining that "true statements with or without a privilege are not a valid basis for a claim of tortious interference with prospective economic advantage." Id; see also Restat 2d of Torts, § 772 (explaining that communicating truthful information to a third party is not tortious interference).

As for the Combat/Test series, Arsenal succeeds in proving its interference with prospective economic advantage claim. Arsenal sells and distributes firearms all over the world, and Neal was aware of the company's products, services, and prospective buyers. That is evidently clear because, on his channel, Neal reviews goods and services in an effort to provide useful information for consumers. The evidence sufficiently clarifies that Neal cannot feign ignorance, for he was informed and knew of the inaccuracy expressed in the MIL-SPEC statement when he received Arsenal's cease and desist letter. His refusal to remove the videos after learning of the MIL-SPEC statement's falsity demonstrates that Neal was not interested in disseminating truth but in damaging Arsenal. Although the Boycott Video is considered separately for purposes of establishing the elements of the claim, it is appropriate here to consider the implications of intent contained therein. The explicit purpose of a boycott is to deter future contractual relationships, to harm a corporation by impeding sales. Thus, viewing the refusal to remove the Combat/Test series in light of the Boycott Video makes Neal's intent to do harm adequately clear. Neal's false statements are not justified or privileged, and they

caused the plaintiff actual harm by deterring prospective buyers from purchasing Arsenal's products. Lastly, by establishing the elements of business disparagement, Arsenal has demonstrated that the means used to deter the prospective economic advantage were unlawful.

Assuming for the sake of argument that Arsenal has established the other elements of its intentional interference claim with respect to the Boycott Video, it has failed to provide evidence that the means used to divert the advantage were unlawful or improper. As stated previously, Arsenal has failed to prove that the Boycott Video contains false statements. Accordingly, the Court assumes them to be true. A truthful statement cannot be the basis for a tortious interference claim, unless the plaintiff can demonstrate that the interference was otherwise unlawful or improper. Plaintiff has not provided evidence to support any such finding. Thus, the Boycott Video does not establish a claim for intentional interference with prospective economic advantage.

V. Injunctive Relief

Pursuant to the above analysis, the Court grants Arsenal the preliminary injunctive relief it requests as it pertains to the Combat/Test series, but not as it pertains to the Boycott Video. In order for the Court to grant a preliminary injunction, the plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008). Arsenal has adequately established a probability of success and irreparable harm. It has established that its hardship will outweigh Neal's hardship. Additionally, it is in the public's interest that truth concerning MIL-SPEC qualifications be promulgated.

Notwithstanding these findings, the Court recognizes the importance of Neal's First Amendment rights at stake. For this reason, the Court emphasizes that the MIL-SPEC statement is the only assertion not within its protections. Thus, the Combat/Test series, meaning the Combat Ready Video and Test Video, is the only content the Court's order affects.

///

///

8

In accordance with finding Arsenal eligible for preliminary injunctive relief, the Court orders Neal to remove the Combat/Test series, meaning the Combat Ready Video and Test Video. However, Neal is under no legal obligation to remove the Boycott Video.

VI. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#11) is **GRANTED IN PART** and **DENIED IN PART**;

IT IS FURTHER ORDERED that Plaintiff submit a proposed injunction granting its motion for injunctive relief in accordance with this order.

DATED this 31st day of May 2013

_____
Kent J. Dawson
United States District Judge